# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2283 | **DATE** | 6/16/2003 |
| **CASE TITLE** | Zurich American Insurance Company, et al. vs. Cebcor Service Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 6/26/2003 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' petition to compel arbitration [1-1] is granted in part, subject to conditions set forth herein, and denied in part. The case is set for status on June 26, 2003 at 9:30 a.m., at which time the parties should inform the court whether additional briefing or a hearing will be necessary.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | JUN 19 2003 date docketed | 20 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| courtroom deputy's initials RJ/lk | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, et al., | ) ) ) | Case No. 02 C 2283 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CEBCOR SERVICE CORPORATION, et al., | ) ) | Judge Joan B. Gottschall |
| Defendants. | ) ) | |

DOCKETED
JUN 1 8 2003

## MEMORANDUM OPINION & ORDER

This matter is before the court on the petition to compel arbitration filed by plaintiffs/petitioners Zurich American Insurance Company, American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Zurich American Insurance Company of Illinois (collectively "Zurich") against defendants/respondents Cebcor Services Corporation ("Cebcor"), Cebic, Ltd. ("Cebic"), Risk Marketing Group, Inc. ("RMG"), and Anthony Proto. For the reasons set forth herein, the motion is granted in part, subject to conditions set forth herein, and denied in part.

The relevant facts, as they emerge from the parties' papers, are as follows. Cebcor, an Illinois corporation located in Chicago, provides employee benefits and workers' compensation insurance to various companies nationwide. Cebcor does not actually issue the insurance coverage—it is neither an insurance company nor an insurance agency. Rather, for some of its customers, Cebcor functions as the technical employer of its customers' employees (through an employee leasing arrangement) for a fee. Other customers purchase traditional workers' compensation through Cebcor. At some point, Cebcor approached Zurich seeking an insurance

20

carrier to provide workman's compensation insurance. In or around January 1999, Zurich entered into an oral Program Agreement (with parties the complaint does not specifically identify) by which Cebcor was to receive workman's compensation insurance from Zurich, RMG was to distribute the insurance policies to Cebcor's customers, and Cebcor was to assume liability for the risks associated with those policies by funding the reinsurance of Zurich's losses. Cebcor was to reimburse Zurich directly for all losses paid by Zurich during the first year of the Program and to reimburse Zurich by means of a reinsurance trust ("Trust") for losses paid after the first year. To cover these post-first year losses, Cebcor agreed to establish and to fund, through monthly deposits, the Trust. The beneficiary of the Trust was Zurich. The grantor of the Trust was Cebic, a Bermuda company owned principally by Cebcor. Cebic and Zurich executed a Trust Agreement establishing Cebic's obligations to maintain the Cebcor-funded Trust. Zurich was to be reimbursed from the Trust for losses on a monthly basis. As alleged in Zurich's underlying complaint, although many parts of the arrangement were captured in writing, the overarching Program Agreement was oral.

In seeking to compel arbitration, petitioners rely on the cover note executed by Zurich and by Charles Stevenson, chairman of Cebic and president of Cebcor ("Reinsurance Cover Note"). Stevenson signed on behalf of Cebic. The Reinsurance Cover Note, on its face, does not address all aspects of the overall Program Agreement. Rather, the Reinsurance Cover Note memorializes the reinsurance agreement and memorializes an agreement by Cebic to accept the first $500,000 "of all losses, claims, suits, actions, or other proceedings with respect to all coverages." The Reinsurance Cover Note specifies when payments are due and the method of payment. It indicates that collateral for Cebic "will be handled as a trust established by Cebcor Service

Corporation" with $375,000 to be paid monthly for a total of $4.5 million.

A dispute has arisen because Cebic and Cebcor have allegedly not reimbursed Zurich for its losses and RMG and Proto have not remitted all premiums to Zurich. Zurich has filed suit seeking an order compelling the defendants to arbitrate.

In opposition to Zurich's Motion to Compel Arbitration, respondents Cebcor, Cebic, RMG and Proto's papers raise the following issues:

1. Is a cover note a binding agreement between its signatories?

2. If the Reinsurance Cover Note is a binding agreement, does the inclusion in its "General Conditions" of the term "Arbitration" bind the signatories to arbitrate disputes arising under the Reinsurance Cover Note?

3. If there was an enforceable agreement to arbitrate evidenced by the Reinsurance Cover Note, who is bound by it?

4. If there was an enforceable agreement to arbitrate, what is its scope? Specifically, does it cover the dispute before the court?

I. <u>Is a Reinsurance Cover Note a Binding Agreement Between its Signatories?</u>

To the extent respondents argue that a cover note is not at least to some extent contractually binding, their argument is rejected. Caselaw, not to speak of the court's own experience in insurance coverage disputes, make clear that a cover note is understood in the insurance industry to manifest both the outline of an agreement and the intention of its signatories to be bound. *See Allianz Life Ins. Co. of N. Am. v. Am. Phoenix Life & Reassurance Co.*, Civil No. 99-802, 2000 U.S. Dist. LEXIS 7216, at *11-12 (D. Minn. Mar. 28, 2000). The Reinsurance Cover Note is binding to the extent it manifests the parties' agreement.

3

II. Does the Inclusion of the Term "Arbitration" in the Reinsurance Cover Note's "General Conditions" Section Constitute a Binding Agreement to Arbitrate?

The court is aware of three decisions addressing the question of whether, in the context of the reinsurance industry, a placement slip or cover note containing the term "arbitration clause" binds the parties who accept the slip or note to arbitrate their disputes. All three decisions agree that including the words "arbitration clause" in a placement slip or cover note, despite their brevity and failure to specify terms, constitutes an enforceable agreement to arbitrate. *CNA Reins. Co. Ltd. v. Trustmark Ins. Co.*, No. 01 C 1652, 2001 WL 648948, at *6 n.4 (N.D. Ill. June 5, 2001) (dicta); *Allianz Life Ins. Co.*, 2000 U.S. Dist. LEXIS 7216, at *12; *N.C. League of Municipalities v. Clarendon Nat'l Ins. Co.*, 773 F. Supp. 1009, 1011 (E.D.N.C. 1990). The theory of these decisions is, as stated in the *Allianz* decision, that an "'arbitration clause' is, standing alone, common language in reinsurance placement slips," "that such slips are often the only formal manifestation of the agreement between the parties to ongoing transactions," and that the words "have a distinct meaning within the industry." *Allianz*, 2000 U.S. Dist. LEXIS 7216, at *12. The court finds that the term "arbitration" in the Reinsurance Cover Note in the instant case is no more vague than the term "arbitration clause" considered by the courts in the decisions cited above. Nor need a cover note or placement slip contain the text of the arbitration clause, as long as the court can identify wording of an arbitration clause typically used in the reinsurance industry when the words "arbitration clause" appear in the cover note. If it can be determined that there was a course of dealing in the reinsurance industry at the relevant time that gave the words "arbitration clause" some reasonably specific meaning, the clause can be enforced as the agreement of the parties. As the cases cited above make clear, the court can fill in unspecified

4

terms concerning the implementation of the agreement to arbitrate based on custom and practice in the reinsurance industry. *See Schulze & Burch Biscuit Co. v. Tree Top, Inc.,* 831 F.2d 709, 715-16 (7th Cir. 1987) (rejecting argument that the clause "All disputes under this transaction shall be arbitrated in the usual manner" was too vague to be enforced because the details the clause failed to provide— such as who the arbitrator would be, where arbitration would take place and what procedures would govern—could be supplied by the district court).

Petitioner has provided the court with the affidavit of James Norman averring that the Reinsurance Cover Note's brief reference to "arbitration" is consistent with industry practice and that it is the practice in the reinsurance industry to arbitrate all disputes unless the parties agree otherwise. Petitioner has also provided the affidavit of Clement S. Dwyer which avers that the inclusion of the word "arbitration" in the Reinsurance Cover Note's General Conditions is "consistent with industry custom and practice" of referring to "an operative word to define the clause and its purpose." Mr. Dwyer concurs that "[i]n the insurance and reinsurance industry, it is customary in nearly all reinsurance contracts to include a clause providing for arbitration as a method of dispute resolution for all disputes arising under the agreement." (Dwyer Aff. ¶4.)

It does not aid respondents that Charles Stevenson, who signed the Reinsurance Cover Note on behalf of Cebic, and Anthony Proto, a principal of RMG and Cebcor, aver that the issue of arbitration was never discussed. (Stevenson Aff. ¶7; Proto Aff. ¶¶8, 9.)[1] Stevenson signed the

---

[1] Respondents additionally offer the affidavit of Jeffry Crumrine, a principal of an insurance brokerage firm, Lockton, working in connection with the Cebcor matter. Mr. Crumrine avers, as do respondents' other affiants, that he recalls no discussion of the issue of arbitration in connection with this matter. He proceeds to aver, "Many of the terms secondary to the arrangement, such as arbitration, were left to be considered for inclusion in a contract of reinsurance, which it was anticipated would follow the January 18 Reinsurance Cover Note." The court assumes that this last sentence is Mr. Crumrine's opinion as to the proper scope of a

Reinsurance Cover Note. It is established beyond dispute that a party who fails to take note of provisions in a written agreement he signs is not thereby excused from those provisions. *See, e.g., Madero v. Refco, Inc.*, 934 F. Supp. 282, 285 (N.D. Ill. 1996); *Ry. Express Agency, Inc. v. Greenberg*, No. 92 C 6383, 1995 WL 753908, at *5 (N.D. Ill. Dec. 8, 1995); *see also CNA Reins. Co.*, 2001 WL 648948, at *2 (arbitration clause binding even where "the parties agree that there was no negotiation, nor for that matter the barest mention, of the arbitration provision in the parties' communications".) Nor is it significant that in Mr. Stevenson's opinion, "reinsurance cover notes illustrate the financial aspects of the relationship between the ceding insurers . . . and the reinsurer . . . ." (Stevenson Aff. ¶ 10.) The Reinsurance Cover Note contained provisions other than "financial aspects." "Arbitration" is not in small print. The issue is not Mr. Stevenson's personal experience but whether the term "arbitration" in a cover note has a generally accepted meaning in the reinsurance industry.

Respondents have also provided the affidavit of expert witness Richard S. Bakka who avers that he "disagree[s] that Cebic's signature on the Reinsurance Cover Note indicates an agreement by anyone, including Cebic, to arbitrate anything." (Bakka Aff., ¶5(5).) Mr. Bakka explains that the term "'arbitration' provides no insight as to the scope of the subjects to be arbitrated, the parties to whom arbitration applies, when, where and how any arbitration would take place." (*Id.*) With all due respect to Mr. Bakka, his opinion, which is an opinion on the law rather than the practice of the reinsurance industry and thus beyond any expertise he professes to have, is contrary to uniform case law and to the policies of the FAA. His opinion that the

---

cover note, not his recollection that the matter of arbitration was specifically deferred, a recollection that would seem inconsistent with his averment that arbitration was never discussed.

Reinsurance Cover Note suffers from "indeterminacy" by noting that the wording is to be "agreed" by Cebic and Zurich, to the extent he means to suggest that the Reinsurance Cover Note is nothing more than an agreement to agree, is also rejected as contrary to practices in the insurance industry that are so well-known as to be probably subject to judicial notice and contrary to all the court decisions of which the court is aware dealing with the effect of an accepted cover note.[2] *See, e.g., Allianz*, 2000 U.S. Dist. LEXIS 7216, at *8 (recognizing that although cover notes are sometimes replaced with more formal, extensive contracts, parties do not always do so).

Having reviewed the parties' evidentiary submissions, the court is satisfied that the term "arbitration" in the General Conditions section of the Reinsurance Cover Note establishes a binding agreement to arbitrate.

Who is Bound by the Agreement to Arbitrate?

Because arbitration is a matter of contract, a party cannot be required to submit to arbitration if it has not agreed to do so. *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). It does not follow, however, that a party is bound to arbitrate only if it actually signed the contract containing the arbitration provision. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000). As the Seventh Circuit has recognized, non-signatories can be bound by an arbitration clause under traditional common law principles of contract and agency law. *Fyrnetics (Hong Kong) Ltd. v.*

---

[2]Obviously, if a cover note leaves certain matters to be negotiated, then to the extent the parties have not agreed on a provision, acceptance of the cover note does not bind them on that subject.

7

*Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) (non-signatory may be bound through, *e.g.*, doctrines of assumption, agency, equitable estoppel, veil piercing and incorporation by reference); *see, e.g., Thomson-CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir. 1995).

To determine which parties are bound by the arbitration agreement, the court's analysis begins with the signatories to the relevant agreement, Zurich and Cebic. Those parties are clearly bound. Zurich argues, however, that non-signatories Cebcor, RMG and Anthony Proto, are also bound. Zurich argues first that "the reinsurance program required the active participation of each Respondent, and the circumstances surrounding the Cover Note and its execution reflect a clear intention to bind all Respondents to its terms." (Pls.' Br. Supp. Mot. to Compel Arbitration ("Pls.' Br.") at 2.) Second, Zurich contends, "Cebcor, RMG and Proto are third-party beneficiaries of the Cover Note and are thus bound by its terms." (*Id.*) Third, Zurich argues that Cebcor, RMG and Proto knowingly accepted the benefits of the Cover Note and thus are estopped from claiming that the arbitration provision does not apply to them. (*Id.*) Fourth, "Cebic acted as Cebcor's agent and subsidiary when it signed the Cover Note, thereby binding Cebcor." (*Id.*) Fifth, Zurich maintains that "because the Respondents have virtually abandoned any semblance of separateness, this Court should pierce the corporate veil and find that all four Respondents are bound to arbitrate in accordance with the Cover Note." (*Id.*) The court rejects this last contention without discussion as there is nothing in the materials filed by Zurich which even approaches the Seventh Circuit's standards for piercing the corporate veil. *See, e.g., Sea-Land Servs., Inc. v. The Pepper Source*, 941 F.2d 519, 520-21 (7th Cir. 1991). Beyond this, the court concludes that Zurich has adequately established that Cebcor, but not Proto or RMG, is

bound by Cebic's agreement to arbitrate.

As to Cebcor, the court concludes that it is bound through principles of agency and equitable estoppel.[3] The Trust was established as a mechanism for reimbursing Zurich for its expenditures in providing workman's compensation insurance to Cebcor. As the Reinsurance Cover Note plainly states, while Cebic, by its agreement was obligated to maintain the Trust and reimburse Zurich from the Trust, Cebcor was to fund the Trust. Because the purpose of the Trust was to facilitate Cebcor's obligations under the parties' Program Agreement and Cebcor was to fund the Trust, and because Cebic's only obligation was to maintain the Trust to carry out Cebcor's obligations to Zurich, it is clear that in entering into the Reinsurance Cover Note (and Reinsurance Trust Agreement), Cebic was acting as Cebcor's agent. Cebic was manifestly acting on behalf of Cebcor, to assist in implementation of a Cebcor obligation by which Cebcor would obtain its workman's compensation insurance, and the cause of action in this case arises from those two parties' relationship. The Trust was set up to implement Cebcor's obligations to Zurich under the Program Agreement. The doctrine of equitable estoppel also establishes that Cebcor is bound by the arbitration agreement. "[W]hen allegations against a parent [Cebcor] and subsidiary [Cebic] are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Int'l Paper Co.,* 206 F.3d at 417 (internal quotation marks omitted).

However, Zurich's argument that RMG and Proto are bound by the arbitration reference in the Reinsurance Cover Note fails. That they were, in Zurich's words, "key players" in the

---

[3]Having found Cebcor bound to arbitration under principles of agency and equitable estoppel, the court declines to address the other arguments Zurich raised regarding Cebcor.

9

agreement referenced by the Reinsurance Cover Note is meaningless. *C.f. Grundstad v. Ritt,* 106 F.3d 201, 205 (7th Cir. 1997) (guarantor—*i.e.,* a key player— not bound by arbitration clause unless unambiguously expressed consent to be bound). The relevant issue is whether they agreed to arbitrate and of that, there is no evidence.

As for Zurich's theory that the parties' interlocking obligations demonstrate that all intended to be bound by the arbitration agreement, that contention makes no sense as a matter of fact and is inconsistent with Seventh Circuit authority. It is plain from the parties' submissions that the parties' obligations were set forth in a number of separate agreements, none of which—save the Reinsurance Cover Note governing the reinsurance agreement—contained an arbitration provision. For example, that RMG entered into an agreement with Zurich to play some role in the insurance/reinsurance arrangement says nothing about whether it intended to be bound by the arbitration provision set forth in the Reinsurance Cover Note. Indeed, the fact that the agreement RMG signed did not have an arbitration clause argues strongly against Zurich's position. "A dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined. *Indus. Elecs. Corp. of Wis. v. iPower Distrib. Group, Inc.,* 215 F.3d 677, 681 (7th Cir. 2000).

Zurich also argues that RMG and Proto are bound to arbitrate under the Reinsurance Cover Note because they are third-party beneficiaries of the program reflected therein. It appears to be Zurich's theory that because all the parties were involved in a "comprehensive reinsurance

10

program" under which RMG's role (and presumably Proto's)[4] was to market and issue Zurich's workman's compensation insurance, RMG and Proto were third-party beneficiaries of the Reinsurance Cover Note. The problems with this argument are innumerable. As defendants correctly point out, whether a party is a third-party beneficiary to a contract depends on the intent of the contracting parties. *Quinn v. The McGraw-Hill Cos., Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (applying Illinois law).[5] Third-party beneficiary status is difficult to prove, at least under Illinois law, because there is a strong presumption that the parties intend their contract only to them, not to third parties. *Id.* Zurich fails to suggest any viable theory by which the facts presented would turn RMG or Proto into third-party beneficiaries. For example, Zurich argues that their contractual duties and benefits would not have been required absent the agreement memorialized in the Reinsurance Cover Note. This hardly makes them third-party beneficiaries. Zurich also claims that the parties clearly intended RMG to be bound by the Reinsurance Cover Note because Cebcor needed RMG—a licensed insurance agency and Cebcor's marketing and distribution arm—to offer Zurich's policies to its customers. The court is not convinced. The Reinsurance Cover Note addresses only the reinsurance component of the program—it says nothing about RMG's (or Proto's) role in marketing and issuing the policies. Rather, the marketing/policy-issuing roles were addressed in the overall Program Agreement and the Broker-

---

[4]Illinois allows registered firms to transact business as an insurance agency. 215 ILCS 5/499.1. A company can qualify as a registered firm only after appointing an officer or director who is a licensed insurance producer to ensure the firm's compliance with Illinois insurance regulations. *Id.* Zurich sued both RMG, a registered firm, and Proto, its president, for failure to remit premiums they collected on the Zurich policies they issued. Evidently Proto was sued individually because he was the officer who held an Illinois insurance producer's license.

[5]For purposes of this discussion, the court relies on Illinois contract law because neither party suggests the applicability of any other forum's law.

Company Agreement between Zurich and RMG. Neither RMG nor Proto were intended third-party beneficiaries of the Reinsurance Cover Note.

The court also rejects Zurich's argument that RMG and Proto should be equitably estopped from avoiding the arbitration clause. "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping v. Tencara Shipyard, S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, No. 99 C 4704, 2003 WL 164220, at *4 (N.D. Ill. Jan. 23, 2003) (quoting *id.*). The only direct benefits under the Reinsurance Cover Note were Cebcor's provision of reinsurance to Zurich, through its subsidiary Cebic, and (arguably) Zurich's provision of insurance to Cebcor's customers. The reinsurance component, provided for by the Reinsurance Cover Note, was undoubtedly a requirement before Zurich would agree to issue policies. Without the reinsurance component, there would have been no need for the Broker-Company Agreement between Zurich and RMG because Zurich would not have issued policies at all. Nevertheless, the fact that RMG (or Proto) was given the role of marketing and issuing the Zurich insurance policies was a direct benefit not of the Reinsurance Cover Note, but of the Broker-Company Agreement between Zurich and RMG and the overarching Program Agreement. Any benefits that RMG or Proto received as a result of the Reinsurance Cover Note were indirect.

Neither RMG nor Proto are bound by the arbitration clause, but Zurich, Cebic and Cebcor are bound. It remains to be determined what, if any, portion of those parties' dispute is subject to the Reinsurance Cover Note's arbitration clause. The case is therefore set for status on June 26, 2003 at 9:30 a.m., at which time the parties should inform the court whether they wish to brief

this issue or whether a hearing will be necessary.

                ENTER:

                JOAN B. GOTTSCHALL
                United States District Judge

DATED: June 16, 2003